1 | Richard M. Heimann (State Bar No. 063607)
2 | Joy A. Kruse (State Bar. No. 142799)
  | Nancy Chung (State Bar. No. 225584)
3 | Mikaela Bernstein (State Bar. No. 261301)
  | LIEFF, CABRASER, HEIMANN &
  | BERNSTEIN, LLP
4 | 275 Battery Street, 29th Floor
  | San Francisco, California 94111-3339
5 | Telephone:   (415) 956-1000
  | Facsimile:    (415) 956-1008
6 | Email: jheimann@lchb.com
  | Email: jakruse@lchb.com
7 | Email: nchung@lchb.com
  | Email: mbernstein@lchb.com

*Lead Counsel For the Derivative Plaintiffs*

[Additional Counsel Listed On Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IN RE BROADCOM CORPORATION DERIVATIVE LITIGATION | Master File No. CV06-3252R (CWx) |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT** |
| | Hearing Date:   December 14, 2009 |
| | Time:              10:00 a.m. |
| | Ctrm:              8 |
| | Judge:            Hon. Manuel L. Real |

845755.3                                                      C-06-3252 R (CWX)

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ................................................................ 1

II.  BACKGROUND ................................................................................. 2

    A.   Broadcom's Voluntary Stock Options Review And Restatement ............................................................................. 2

    B.   The Options-Related Litigations ................................................ 3

        1.   This Federal Derivative Action ....................................... 3

        2.   The State Derivative Action ............................................ 4

        3.   The Consolidated Class Action ....................................... 4

        4.   The DOJ's Criminal Action ............................................ 4

III. HISTORY OF THE FEDERAL DERIVATIVE CASE ......................... 5

    A.   Pre-Settlement Discovery ......................................................... 5

    B.   The Special Litigation Committee .............................................. 5

    C.   Settlement Negotiations and Mediation ..................................... 6

    D.   Motion For Preliminary Approval And Shareholder Objections ............................................................................... 7

IV.  THE SETTLEMENT TERMS ............................................................. 8

V.   THE STANDARDS FOR JUDICIAL APPROVAL OF DERIVATIVE SETTLEMENT .......................................................... 10

    A.   The Law Favors Settlement ..................................................... 10

    B.   The Role Of The Court In Approval Of A Derivative Settlement ............................................................................. 11

VI.  THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE APPROVED ............................... 12

    A.   The Proposed Settlement Enjoys A Presumption Of Reasonableness. .................................................................... 12

        1.   The Settlement is Recommended by the Court-Appointed Lead Counsel, the SLC, the Court-Appointed Special Master, and an Experienced Mediator. ...................................................................... 12

    B.   The Settlement Appropriately Balances The Risks Of Litigation And The Benefit To The Company Of A Certain Recovery .................................................................. 14

        1.   The $118,000,000 Payment is a Substantial Benefit to Broadcom ............................................................... 15

        2.   The Payments Being Made by the Insurers on Behalf of the Settling Defendants Result from a Compromise of Complicated Coverage Issues .............. 16

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3

C.    The Settling Parties Negotiated The Settlement, Having A
Thorough Understanding Of The Strengths And
Weaknesses Of The Case ........................................................ 18

4

5

VII.    THE SETTLEMENT IS FAIR TO THE NON-SETTLING
DEFENDANTS .................................................................... 20

6

VIII.    THE AGREEMENT FOR THE PAYMENT OF FEES AND
EXPENSES IS APPROPRIATE ............................................ 21

7

IX.    THE COURT SHOULD ENTER A STAY IN BOTH THE
FEDERAL DERIVATIVE AND CLASS ACTIONS ........................ 21

8

X.    CONCLUSION ................................................................. 22

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## <u>Cases</u>

*Berry v. School Dist. of City of Benton Harbor*,
184 F.R.D. 93 (W.D. Mich. 1998) ................................................................12

*Epstein v. Wittig*,
Case No. 03-4081-JAR, 2005 WL 3276390 (D. Kan., Dec. 2,
2005)..................................................................................................................8

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)...................................................................14, 18

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,
225 F.R.D. 616 (S.D. Cal. 2005)..................................................................12

*In re Apple Computer, Inc. Derivative Litig.*,
2008 WL 4820784 (N.D. Cal. Nov. 5, 2008)..........................................11, 14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .........................................................................18

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ........................................................................21

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000).........................................................................20

*In re Omnivision Technologies, Inc.*,
559 F.Supp. 2d 1036 (N.D. Cal. 2008) ........................................................12

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)...........................................................................10

*In re Pittsburgh & L.E.R. Co. Sec. & Antitrust Litig.*,
543 F.2d 1058 (3d Cir. 1976) .......................................................................11

*In re Warner Commc'ns Sec. Litig.*,
798 F.2d 35 (2d Cir. 1986)......................................................................11, 18

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983)...................................................................10, 11

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
797 F.2d 799 (9th Cir. 1986).........................................................................10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
CV 99-5666 LGB(CWx), 2003 U.S. Dist. LEXIS 25375 (C.D.
Cal. Jan. 5, 2003).........................................................................................12

**TABLE OF AUTHORITIES**
**(continued)**

Page

*NVIDIA Corp. Deriv. Litig.*,
   No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal.
   Dec. 22, 2008) ................................................................................14

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982).....................................11, 12, 14, 18

*Ross v. Bernhard*,
   396 U.S. 531, 90 S.Ct. 733, 24 L.Ed. 2d 729 (1970) ...................11

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1998)...........................................................12

*Williams v. First Nat'l. Bank*, 216 U.S. 582, 30 S. Ct. 441, 54 L. Ed.
   625 (1910) ......................................................................................10

**Statutes**

California Corporations Code
   § 25402.............................................................................................3
   § 25403.............................................................................................3

Exchange Act of 1934
   Section 10(b).....................................................................................3
   Section 14(a).....................................................................................3
   Section 20(a).....................................................................................3

Federal Rules of Civil Procedure
   Rule 23.1.........................................................................................11

This memorandum is submitted jointly by Federal Derivative Plaintiffs L A Murphy, Gordon Postlmayr, Alfred Ronconi and Yen Shei; Nominal Defendant Broadcom Corporation ("Broadcom" or the "Company"); Broadcom's Special Litigation Committee (the "SLC"); and Settling Defendants David A. Dull, George L. Farinsky, Aurelio E. Fernandez, Bruce E. Kiddoo, John E. Major, Scott A. McGregor, Scott J. Poteracki, Alan E. Ross, Robert E. Switz and Werner F. Wolfen. Pursuant to this Court's Amended Order Preliminarily Approving Derivative Settlement and Providing For Notice entered September 30, 2009 (the "Preliminary Approval Order"), the Settling Parties seek final approval of a proposed partial settlement (the "Settlement"), the terms of which are set forth in the Stipulation and Agreement of Partial Settlement, filed August 28, 2009 (the "Stipulation").

## I. **PRELIMINARY STATEMENT**

The issue presented by this motion for final approval is whether the terms of the Settlement amount to fair, adequate and reasonable consideration to Broadcom for its release of the derivative claims against ten Settling Defendants and the Released Persons.

The Settlement provides for consideration to Broadcom valued at more than $118,000,000—a significant recovery for a nominal defendant in a derivative case by any measure. The Settlement leaves open the possibility of additional recovery for the Company, as it does not resolve claims against three Non-Settling Defendants.[1] The Settlement further provides for stays of all proceedings and discovery in the private federal actions regarding Broadcom's option issues. This should provide a further benefit to the Company by reducing the litigation expenses the Company incurs as a result of its indemnification and advancement obligations to the Individual Defendants. Finally, the Settlement includes terms to ensure that

---

[1] Unless otherwise specified, terms with initial capitalization are used as defined in the Stipulation and Agreement of Partial Settlement.

the three Non-Settling Defendants remain in the same position they would have been in absent the Settlement.

It is the opinion of Lead Counsel for Derivative Plaintiffs, the SLC and Broadcom that the Settlement constitutes an exceedingly favorable resolution for Broadcom of a substantial portion of this complex case.  The Settlement is further recommended by the Court-appointed Special Master, John Francis Carroll, who, along with the Hon. Daniel Weinstein (Ret.), presided over the mediation and negotiations among the Settling Parties for over sixteen months.  In short, it is the judgment of each of these parties that the $118,000,000 in consideration for the Company's releases of the Settling Defendants is a resolution that is fair, adequate and reasonable to Broadcom, on whose behalf the derivative claims were brought.

Accordingly, the Settlement should be approved.

## II.   BACKGROUND

### A.   Broadcom's Voluntary Stock Options Review And Restatement

In May 2006, various news agencies and financial analysts reported that a number of companies appeared to have granted stock options to employees and executives just before increases in the companies' stock prices.  In response, Broadcom, under the direction of the Audit Committee of its Board of Directors, initiated a voluntary review of all option grants made since the Company's initial public offering in April 1998.

Broadcom disclosed the findings of this review in its Form 10-K/A for 2005, filed with the SEC on January 23, 2007 (the "Restatement").  One of the findings was that the grant dates for some employee stock options awarded between April 1998 and May 2003 were selected with hindsight.  The Restatement disclosed separately that the Company had not accurately accounted for stock-based compensation expenses associated with many other stock option grants made during that period.  As a result, Broadcom recorded $2.220 billion in net additional

1    stock-based deferred compensation expenses for the years 1998 through 2005.  All

2    of those expenses were non-cash accounting charges.

3               **B.      The Options-Related Litigations**

4         Broadcom's stock options issues resulted in three types of private civil

5    actions: this consolidated derivative litigation (the "Federal Derivative Action"),

6    consolidated derivative litigation in state court, and a federal shareholder class

7    action (also in this Court).  The complaints in each of the litigations allege,

8    generally, that the defendants intentionally manipulated certain Broadcom stock

9    option grants to benefit themselves and others, and (in the class action) to

10   artificially inflate the Company's stock price.  Broadcom's historical stock option

11   practices also resulted in a criminal investigation by the United States Attorney's

12   Office (the "USAO") and the subsequent indictment of two former Broadcom

13   officers.

14               **1.      This Federal Derivative Action**

15        In October 2006, this Court consolidated the multiple shareholder derivative

16   actions pending in this Court under the caption *In re Broadcom Corporation*

17   *Derivative Litigation*, Master File CV-06-3252-R (CWx), and appointed

18   Richard M. Heimann of Lieff, Cabraser, Heimann & Bernstein, LLP to serve as

19   lead counsel ("Lead Counsel").  On November 3, 2006, plaintiffs filed their

20   Consolidated Amended Derivative Complaint (the "Amended Complaint").

21        The Amended Complaint asserts claims against thirteen individual

22   defendants on behalf of Broadcom, which is named as a nominal defendant.  The

23   claims include alleged violations of Sections 10(b), 14(a), and 20(a) of the

24   Securities Exchange Act of 1934, breaches of fiduciary duty, abuse of control, gross

25   mismanagement, waste of corporate assets, unjust enrichment, rescission,

26   constructive fraud, insider trading, violations of California Corporations Code

27   §§ 25402 and 25403, and an accounting and constructive trust.  The Amended

28   Complaint alleges, among other things, that defendants intentionally manipulated

certain of Broadcom's stock option grant dates between 1997 and May 2003 in order to enrich themselves at the expense of Broadcom and Broadcom shareholders. The Amended Complaint further alleges that Broadcom has incurred significant expenses as a result of the historic options granting problems, including but not limited to, legal fees and expenses in connection with internal investigations and lawsuits.  The Amended Complaint seeks recovery for the Company for these and other alleged harms.

### 2.    The State Derivative Action

On September 18, 2006, a Consolidated Complaint alleging derivative claims purportedly on behalf of Broadcom was filed in Orange County Superior Court against the Settling Defendants and certain other current and former Broadcom officers and directors (the "State Derivative Action").  On January 8, 2007, the state Court entered an order staying prosecution of the State Derivative Action.

### 3.    The Consolidated Class Action

In November 2006, this Court consolidated putative shareholder class actions under the caption *In Re Broadcom Corporation Class Action Litigation*, Case No. CV-06-5036-R (CWx) (the "Class Action"), and appointed New Mexico State Investment Council to serve as Lead Class Plaintiff.  In connection with the Court's preliminary approval of the Settlement in the Federal Derivative Action, described below, a partial stay was entered in the Class Action.  *See* Dkt. Nos. 328, 329.

### 4.    The DOJ's Criminal Action

In June 2008, Non-Settling Defendants Dr. Nicholas and Mr. Ruehle were indicted in the Central District of California for alleged crimes related to stock options backdating at Broadcom.  (*See United States v. Henry T. Nicholas, III, et al.*, Case No. CR 08-00139-CJC.).  Also in June 2008, Non-Settling Defendant Dr. Samueli pled guilty to making a materially false statement to the SEC in connection with its investigation of alleged stock options backdating at the

1   Company.  Mr. Ruehle's criminal trial commenced in October 2009, and

2   Dr. Nicholas' criminal trial is scheduled to begin in February 2010.

3   **III.   HISTORY OF THE FEDERAL DERIVATIVE CASE**

4       **A.   Pre-Settlement Discovery**

5       The parties have taken substantial discovery in the Federal Derivative

6   Action.  Since January 2008, Broadcom has made voluminous productions of

7   documents and database records to the parties in the Federal Derivative Action and

8   the Class Action.  Ernst & Young has also made substantial document productions

9   to the parties in both actions, as has the counsel that performed the Conduct Review

10   on behalf of Broadcom's Audit Committee.  All of those productions together total

11   more than 4.1 million pages of documents. In addition, fourteen individuals have so

12   far been deposed.

13       **B.   The Special Litigation Committee**

14       Broadcom's Board of Directors formed the SLC in May 2007.  The Board

15   delegated to the SLC sole authority on behalf of Broadcom (a) to evaluate the

16   claims made in the derivative actions (including this action); (b) to assess whether

17   the continuation of the derivative actions or pursuit of those claims by or on behalf

18   of the Company is in the Company's best interests; and (c) to make any and all

19   decisions on behalf of the Company regarding the litigation, settlement or other

20   disposition of the derivative actions and claims.  Declaration of Terry W. Bird

21   ("Bird Decl."), ¶ 3.[2]

22       Pursuant to the authority granted to it, the SLC adopted a resolution in

23   August 2009, which approved the Settlement on behalf of Broadcom, authorized

24   the Company's counsel to execute the Stipulation and associated documents, and

25   authorized the Company's counsel to seek Court approval of the Settlement.  *Id.* at

26   ¶¶ 7-8.

27

28

---

[2] All declarations referenced herein were filed in support of this Joint Motion for Final Approval of Partial Settlement.

## C.   Settlement Negotiations and Mediation

For over sixteen months, the parties engaged in extensive negotiations regarding a potential settlement of this case.  Those negotiations were presided over by Judge Weinstein, a highly skilled and experienced mediator, and by Special Master Carroll.  The mediation also involved Broadcom's eleven directors and officers insurance carriers, covering eighteen insurance policies, for the policy period from September 2005 to September 2006 (the "Insurers").

The negotiations began with a mediation session on February 11, 2008.  Declaration of Judge Daniel H. Weinstein (Ret.) ("Weinstein Decl."), p. 2:13.  That session was attended by representatives for the SLC, the Federal Derivative Plaintiffs, each of the defendants, and the Insurers.  *Id.* at p. 2:13-16.  A second mediation session took place in June 2008.  *Id.* at p 2:23-26.  This session included the class plaintiffs, as well as certain defendants and interested parties in the derivative litigation.  *Id.* at pp. 2-3.  Since that time, there have been numerous mediation sessions presided over by Judge Weinstein and Special Master Carroll.  *Id.* at p. 3:3-18; *see also* Declaration of Special Master John Francis Carroll, Mediator and Appointed Special Master ("Carroll Decl."), ¶ 3.

In connection with the mediation sessions, all of the individual defendants (including Dr. Nicholas and Mr. Ruehle), Broadcom, the SLC, Federal Derivative Plaintiffs and the Insurers submitted extensive confidential mediation memoranda.  *Id.* at pp. 2-3.  In some cases, certain parties submitted multiple affirmative and responding memoranda.  *Id.*  Those memoranda addressed at considerable length various claims, defenses, insurance coverage issues, damages theories and damages estimates at issue in the derivative actions.  *Id.*  Judge Weinstein and Special Master Carroll considered each of those written submissions while assisting in the mediation efforts.  *Id.* at p. 4:1-11.  Judge Weinstein and Special Master Carroll also each participated in numerous telephone and in-person conferences with certain of the parties and the Insurers.  *Id.* at p. 3:9-11; Carroll Decl., ¶ 3.

Broadcom, as a named insured, and its counsel actively participated in the mediation sessions and conferences in which the significant insurance coverage issues were addressed.  In order to further assist in the negotiations and evaluation of the numerous issues involving insurance coverage, Broadcom and derivative plaintiffs each engaged the services of separate coverage counsel, Howrey LLP and Farella, Braun + Martel, respectively.

The parties' settlement discussions, mediation sessions and other conferences culminated in a mediators' proposal in April 2009.  *Id.* at p. 4:1-11.  The proposal was ultimately accepted by the Settling Parties and the Insurers, subject to preparation of a binding written agreement on all issues.  *Id.* at p. 4:12-16.  That agreement and its terms were memorialized by the Stipulation and its supporting exhibits.  *Id.*; *see also* Declaration of Richard M. Heimann ("Heimann Decl."), ¶ 5.

### D.    Motion For Preliminary Approval And Shareholder Objections

On August 28, 2009, Lead Counsel and the other Settling Parties filed a Joint Motion for Preliminary Approval of the Settlement (the "Preliminary Approval Motion"), along with the Stipulation.  On September 8, 2009, two of the Non-Settling Defendants, Dr. Nicholas and Mr. Ruehle (the "Objectors"), filed an Opposition to the Motion for Preliminary Approval and a Joinder to that Opposition, respectively.[3]  The Objectors opposed the Preliminary Approval Motion in their capacity as shareholders, arguing that the proposed notice of the settlement was "misleading."  The Objectors did *not* object to the Settlement in their capacity as Non-Settling Defendants—*e.g.*, on the ground that the Settlement should not be approved because it is unfair to them.

On September 23, 2009 the State Derivative Plaintiffs filed a Submission of Interested Shareholders of Nominal Defendant Broadcom, Inc. Concerning the Joint Motion for Preliminary Approval (the "Submission") which also objected to the

---

[3] The third Non-Settling Defendant, Dr. Samueli, filed a notice of non-opposition to the Preliminary Approval Motion.  Dkt. No. 463.

1    Preliminary Approval Motion.[4]  The State Derivative Plaintiffs argued that (1) the

2    Court should first rule on a then-pending motion to disqualify Irell & Manella LLP

3    from representing Broadcom and other defendants;[5] and (2) the Settlement is not

4    fair, adequate and reasonable to Broadcom.

5          After considering the objections, this Court entered the Preliminary Approval

6    Order on September 30, 2009.  Subsequently, the Court-approved Notice of

7    Proposed Settlement of Shareholder Derivative Action and Hearing was timely

8    published as a Current Report on Form 8-K filed with the Securities and Exchange

9    Commission and on Broadcom's company website.  Also pursuant to the

10   Preliminary Approval Order, the Court-approved Summary Notice of Proposed

11   Settlement of Derivative Action was published on October 7, 2009 in *Investor's*

12   *Business Daily* and the *Wall Street Journal*.  Declaration of Alicia Gehring

13   ("Gehring Decl."), ¶ 3.

14   **IV.    THE SETTLEMENT TERMS**

15         Pursuant to the Settlement, Broadcom will receive $118,000,000 in exchange

16   for releases of claims against the Settling Defendants and Released Persons.[6]  Each

17   of the Settling Defendants and Released Persons is an insured under Broadcom's

18   directors and officers liability insurance policies.  As a result, the Insurers will pay

19   $118,000,000 to the Company on their behalf.[7]  The Settlement Fund will be

---

[4] Class Plaintiffs also submitted a "partial objection," but withdrew that objection prior to the preliminary approval hearing.

[5] The Court denied the motion to disqualify Irell on October 19, 2009.

[6] In addition to the Settling Defendants, the Released Persons include certain other current and former Broadcom officers and directors Martin Colombatto, Myron S. Eichen and/or his estate, Maureen Grzelakowski, Nancy Handel, Timothy Lindenfelser and Vahid Manian.  Although not named defendants in the Federal Derivative Action, litigants in "derivative suits may release both the named defendants as well as unnamed parties with respect to asserted or unasserted claims arising out of the same underlying facts."  *See Epstein v. Wittig*, Case No. 03-4081-JAR, 2005 WL 3276390 at *4 (D. Kan., Dec. 2, 2005).

[7] The Settling Defendants' and Released Persons' agreement to relinquish their rights under the policies is subject to the terms and conditions of the Insurance

1    disbursed to Broadcom upon this Court's final approval of the Stipulation

2    (notwithstanding any appeals or potential appeals), as ordered by this Court.

3        The Company will receive important additional benefits beyond the

4    Settlement Amount.  First, the Company has benefited significantly from the

5    repricing and cancellation of certain options.  Specifically:  (a) Settling Defendant

6    David A. Dull voluntarily agreed to repricing of certain outstanding stock options,

7    for a forfeiture valued at approximately $252,652.37; (b) Broadcom repriced and

8    terminated all outstanding exercisable stock options granted after 2002 to former

9    Treasurer Glenn Josephson and repriced his earlier-granted stock options, for a

10   forfeiture valued at approximately $522,000.17; and (c) former Manager of

11   Financial Reporting Gail Patton voluntarily agreed to repricing of certain

12   outstanding stock options, for a forfeiture valued at approximately $71,378.38.  In

13   addition, none of these individuals was permitted, or will be permitted, to receive

14   any financial assistance from Broadcom to mitigate adverse tax or other

15   consequences relating to the repricing of their options.

16       Second, the Company will retain its claims against the three Non-Settling

17   Defendants.  In light of the Non-Settling Defendants' pending criminal matters,

18   resolution of the derivative claims against them will be resolved in the future.  Lead

19   Counsel believes that the Non-Settling Defendants include the individuals with the

20   most potential liability.  Since at least two of the Non-Settling Defendants has

21   substantial assets, in Lead Counsel's view, the preserved claims represent

22   significant value to the Company.  Heimann Decl., ¶ 10.

23   Agreement, which is attached to the Stipulation as Exhibit E.  The $118,000,000 in

24   consideration to Broadcom consists of $43.3 million that Broadcom had already
     received from the Insurers under a reservation of rights as of the date of the

25   Stipulation, as well as a Settlement Fund consisting of an additional $74.7 million.
     As set forth more fully in Section 2.G of the Insurance Agreement, should

26   Broadcom recover more than $15,000,000 from the Non-Settling Defendants in the
     Federal Derivative Action or the State Derivative Action, or both, then Federal

27   Insurance Company shall be repaid $500,000 of its contribution to the Settlement

28   Fund.  In this event, the Settlement Amount shall be equal to $117,500,000.

1    Third, the Settlement provides for stays of proceedings and discovery in both
2    this case and the Class Action pending resolution of the criminal matters.  These
3    stays benefit the Company.  The Company has indemnification and advancement
4    obligations to each of the Non-Settling Defendants and all of the defendants in the
5    Class Action.  If litigation in this case and the Class Action were to continue during
6    the criminal trials, Broadcom would incur substantial expenses in funding the civil
7    defense of the Non-Settling Defendants, as well as the defense for the Class Action
8    defendants.  Accordingly, the stays will substantially reduce Broadcom's funding
9    burden in the civil cases while the criminal trials proceed.  Further, there is a
10   substantial likelihood that the civil litigation can be conducted more efficiently after
11   the criminal trials conclude, thus lessening the costs to Broadcom and its
12   shareholders.

13   This substantial consideration—the $118,000,000 in cash, the benefits of the
14   option repricings and cancellations, and the litigation stays—easily supports the
15   releases that Broadcom is giving to the Released Persons.

16   **V.   THE STANDARDS FOR JUDICIAL APPROVAL OF DERIVATIVE**
17   **SETTLEMENT**

        **A.   The Law Favors Settlement**

18

19   There is a strong policy favoring compromises which resolve litigation,
20   particularly in complex cases where judicial resources can be saved by avoiding
21   formal litigation.  *Williams v. First Nat'l. Bank*, 216 U.S. 582, 30 S. Ct. 441, 54 L.
22   Ed. 625 (1910); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802
23   (9th Cir. 1986).  Derivative actions readily lend themselves to compromise because
24   of the difficulties of proof, the uncertainties of the outcome, and the typical length
25   of the litigation.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)
26   (approving a $12 million settlement in a derivative action with potential recovery of
27   over  $1 billion, noting the "odds of winning [a] derivative lawsuit [are] extremely
28   small" and "derivative lawsuits are rarely successful"); *see also Maher v. Zapata*

1   *Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (settlements of derivative actions are

2   particularly favored because such litigation is "'notoriously difficult and

3   unpredictable'") (citation omitted).  Thus, courts do not reject settlements of

4   derivative actions lightly.  *Id.*

5       **B.**    **<u>The Role Of The Court In Approval Of A Derivative Settlement</u>**

6       Settlement of a derivative action requires court approval.  Fed. R. Civ.

7   P. 23.1.  The Court's function, however, is not to conduct "a trial or rehearsal for

8   trial on the merits," nor is it to "reach any ultimate conclusions on the [underlying]

9   contested issues of fact and law."  *Officers for Justice v. Civil Serv. Comm'n*,

10  688 F.2d 615, 625 (9th Cir. 1982).  Furthermore, "[t]he proposed settlement is not

11  to be judged against a hypothetical or speculative measure of what might have been

12  achieved by the negotiators."  *Id.*

13      Rather, under well-settled Ninth Circuit authority, the Court's review of a

14  proposed settlement is to reach a "reasoned judgment" that the agreement "taken as

15  a whole, is fair, reasonable, and adequate" and not the product of "fraud or

16  overreaching by, or collusion between, the negotiating parties."  *Id.*; *see also*

17  *Maher*, 714 F.2d at 455; *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d

18  Cir. 1986). Further, in a shareholder derivative suit, such as this one, the

19  corporation on whose behalf the suit was brought "[a]lthough named a defendant, []

20  is the real party in interest."  *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733,

21  24 L.Ed. 2d 729 (1970).  "Since the corporation is the intended beneficiary of the

22  suit, fairness of the settlement must in the first instance … be measured by the

23  benefit or detriment to" the corporation.  *In re Pittsburgh & L.E.R. Co. Sec. &*

24  *Antitrust Litig.*, 543 F.2d 1058, 1068 (3d Cir. 1976); *see also In re Apple Computer,*

25  *Inc. Derivative Litig.*, No. C06-2128 JF (HRL), 2008 WL 4820784, *2 (N.D. Cal.

26  Nov. 5, 2008).

27      Courts look to a number of factors in determining whether a proposed

28  settlement is "fair, reasonable and adequate" which include the:

(1)   "experience and views of counsel;"

(2)   "presence of a governmental participant;"

(3)   "amount offered in the settlement" as compared to the "risk, expense, complexity and likely duration of further litigation;"

(4)   "extent of discovery completed" and "stage of the proceedings;" and

(5)   "the reaction of [shareholders] to the proposed settlement."

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1998); *see also Officers for Justice*, 688 F.2d at 625; *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, No. CV 99-5666, 2003 U.S. Dist. LEXIS 25375, *5-6 (C.D. Cal. Jan. 5, 2003).

These factors favor approving the proposed Settlement as fair, reasonable and adequate.

## VI.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE APPROVED

### A.   The Proposed Settlement Enjoys A Presumption Of Reasonableness.

As an initial matter, "[t]he settlement recommendations of plaintiffs' counsel should be given a presumption of reasonableness" in representative litigation, such as a shareholder derivative action. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *see also Berry v. School Dist. of City of Benton Harbor*, 184 F.R.D. 93, 104 (W.D. Mich. 1998) ("the court generally will give deference to plaintiffs' counsel's determination to settle" representative litigation). Further, settlement negotiations "supervised by [a] Court-appointed mediator" help to ensure that "the proposed settlement is the product of arm's length, serious, informed and non-collusive negotiations." *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005).

#### 1.   The Settlement is Recommended by the Court-Appointed Lead Counsel, the SLC, the Court-Appointed Special Master, and an Experienced Mediator.

This Court's order appointing Mr. Heimann as Lead Counsel specifically authorizes him to negotiate settlements. *See* Order Appointing Lieff Cabraser

1  Heimann & Bernstein, LLP as Lead Counsel, Dkt. 61.  Consistent with that charge,

2  Mr. Heimann has engaged in extensive analysis of the claims and defenses in this

3  case, and determined that the releases being given by Broadcom are supported by

4  the Settlement's consideration to Broadcom.  Heimann Decl., ¶¶ 7-8.

5  Additionally, in the discharge of its duty to protect the Company's best

6  interests, Broadcom's Board of Directors established the SLC.  The SLC was

7  delegated sole authority on behalf of the Company to make decisions regarding the

8  litigation, settlement or other disposition of the derivative actions.  Bird Decl., ¶¶ 3-

9  4.  Its assessment and decisions were aided by counsel from the Bird Marella and

10  Kaye Scholer firms.  The SLC has passed a resolution approving the Settlement.

11  *Id.*

12  This Court's order appointing John Francis Carroll as Special Master

13  specifically authorizes the Special Master to oversee settlement discussions.  *See*

14  Order Appointing Special Master for Discovery and Settlement Proceedings,

15  Dkt. 144, (authorizing Special Master Carroll "to conduct, with the consent of the

16  parties, settlement discussions to work toward the early resolution of the disputes

17  between the parties").  Special Master Carroll, together with Judge Weinstein,

18  participated extensively in the settlement negotiations.  It is their view that the

19  negotiations were conducted in good faith and at arm's-length.  Weinstein Decl.,

20  p. 3:19-27; Carroll Decl., ¶ 4.  Based on their extensive dealings with the parties,

21  each of them is satisfied that the proposed settlement is fair, reasonable and

22  adequate to Broadcom.  Weinstein Decl., p. 5:1-13; Carroll Decl., p. 3:11-12.

23  In sum, after careful analysis of the law and a thorough examination of the

24  facts relating to this litigation, *each of these parties* has concluded that the benefits

25  to be conferred by the Settlement will result in an exceptional resolution for

26  Broadcom in exchange for the releases provided by the Settlement.  The support of

27  each of these constituencies leaves no reason to doubt the Settlement's fairness to

28

1   Broadcom.  On the contrary, their support gives rise to a presumption that the

2   Settlement is fair, reasonable and adequate to Broadcom.

3       **B.      The Settlement Appropriately Balances The Risks Of Litigation**
        **And The Benefit To The Company Of A Certain Recovery**

4

5       With that presumption in mind, the "principal factor to consider" in the

6   approval of a shareholder derivative suit is the "benefit to [the Company] as

7   compared to the risks posed by [continued] litigation." *Apple Computer*, 2008 WL

8   4820784 at * 2; *see also Officers for Justice*, 688 F.2d at 625; *see also Girsh v.*

9   *Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  In conducting this balancing, courts

10  routinely recognize both the very real risk that shareholder derivative plaintiffs will

11  be unsuccessful if the litigation is not settled and the great expense incurred by the

12  Company—the only real party in interest here—that would result from litigation

13  through trial and appeal.  *See NVIDIA Corp. Deriv. Litig.*, No. C-06-06110-SBA

14  (JCS), 2008 WL 5382544 at * 3 (N.D. Cal. Dec. 22, 2008) ("the benefits of

15  settlement must also be tempered" by the "costs associated with trial" and the fact

16  that "even if liability was established, the amount of recoverable damages is

17  uncertain").

18      Lead Counsel has determined that it is desirable that the Company's claims

19  against the Settling Defendants be settled in return for the substantial consideration

20  to the Company provided for in the Stipulation.  This determination was made

21  taking into account the uncertain outcome and the risk of this complex derivative

22  action and the inherent problems of proof of, and possible defenses to, the asserted

23  violations by Settling Defendants.  Lead Counsel has also considered the extensive

24  cost to the Company in continuing this litigation against the ten Settling Defendants

25  through trial.  Finally, Lead Counsel considered the claims against, and potential

26  liability of, the other Released Persons and determined that their dismissal and

27  release is warranted.

28

Lead Counsel therefore submits that the substantial benefit to be derived by Broadcom from the proposed Settlement is extraordinary in light of the risks and costs to Broadcom posed by continuing litigation against the Released Persons. Heimann Decl., ¶¶ 7-8.

### 1.    The $118,000,000 Payment is a Substantial Benefit to Broadcom

The Settlement provides monetary consideration to the Company of roughly $118,000,000.[8]  Based on his analysis of the merits of the claims and possible damages recovery, Lead Counsel concluded that this is appropriate consideration for releases of claims against the Settling Defendants and Released Persons.  *Id.* at ¶ 7.  Indeed, this is an exceptional recovery for a nominal defendant in a derivative action by any standard.  Of the dozens of options backdating derivative actions settled around the country, the Settling Parties are aware of only *one* that provided a more lucrative recovery to the company (and most of that recovery was attributable to options re-pricings and cancellations, rather than to cash payments like those Broadcom stands to receive here).  *Id.* at ¶ 9.  Many of the other settlements actually provided for *no* monetary recovery to the company, and none of those other settlements was valued at more than a small fraction of the recovery here.  *Id.*

Further, the Company retains claims against three Non-Settling Defendants, who include the individuals alleged to be the most responsible for the problems with the Company's historic options granting practices and the damages suffered by the Company as a result.  Lead Counsel believes that these claims represent significant value to the Company and that the Non-Settling Defendants, two of

---

[8] The Objectors argued incorrectly in their opposition to the Preliminary Approval Motion that the $43.3 million advanced by the Insurers prior to the Settlement should not be counted.  (Opposition at 1.)  This argument is wrong because those payments were made subject to a reservation of rights.  The Insurance Agreement releases this reservation.

1   whom are billionaires, can and should make significant personal contributions to

2   Broadcom for the alleged damage to the Company.  *Id.* at ¶ 10.

3          **2.     The Payments Being Made by the Insurers on Behalf of the
             Settling Defendants Result from a Compromise of
4            Complicated Coverage Issues**

5          The payments Broadcom will receive in exchange for the releases to the

6   Released Parties result from the compromise of claims involving an extremely

7   complicated tower of directors and officers insurance.  That tower was represented

8   by eleven insurance carriers and their counsel, representing the eighteen separate

9   policies that make up the tower.  Broadcom's total D&O insurance tower was

10  $210 million, consisting of $100 million of coverage under "Side A," "Side B," and

11  "Side C," and an additional $110 million of Excess Side A coverage.  Over many

12  months, the parties, their counsel (including coverage counsel), the Special Master

13  and the mediator, worked through a number of complicated coverage issues.[9]

14  Weinstein Decl., pp. 2-3.

15         Specifically, the Insurers asserted that the policies provided a rescission right

16  if the applications pursuant to which the policies were issued included materially

17  false or misleading information.  This was a significant issue because if any

18  allegedly false information in the application (which incorporated the Company's

19  financial statements by reference) was known to Broadcom's current or former

20  CEO or CFO, the Insurers would argue that that information was imputed—and

21  therefore that the policies could be rescinded as—to all insureds.  The criminal

22  trials of Dr. Nicholas and Mr. Ruehle will put at issue whether either of these

23  individuals knew about the errors in the Company's financial statements.

_____

24  [9] Those issues were further complicated by the multi-layer tower, in which many of
25  the policies had provisions requiring "exhaustion" of all layers below.  Those
    exhaustion provisions generally provide that any particular Insurer is not obligated
26  to make any payments on its policy until all policies below it have paid out in full.
    As a result, compromise of the insurance disputes required unanimous agreement
27  among representatives for all eighteen policies—an exceedingly demanding
    requirement that added to the complexity of negotiations.
28

1   Accordingly, convictions in the either of the criminal trials could have put

2   Broadcom's insurance coverage at risk.[10]

3       The policies also included Prior and Pending Litigation Exclusions ("PPL

4   Exclusions").  These exclusions generally provide that coverage does not exist for

5   claims arising out of any fact, circumstance or situation underlying or alleged in a

6   prior lawsuit.  In this case, the Insurers argued that the PPL Exclusions applied to

7   any stock-options related claims based on a lawsuit that was threatened in late

8   2000.  The Insurance Agreement resolves the parties' disagreements about the

9   applicability of the PPL Exclusions.

10      There also were significant disputes between Lead Counsel and the Insurers

11  concerning the recoverable damages that were covered by the policies.  Lead

12  Counsel seeks to recover for the Company damages resulting from attorneys' fees,

13  clean-up and investigation costs, and foregone income to the Company based on

14  options exercised by individuals at prices that were later determined to be too low.

15  Heimann Decl., ¶ 4.  The Insurers, on the other hand, argued that none of these

16  were recoverable damages based on the language of the policies.  *Id.*  The Insurers

17  also argued that the Company enjoys no right to reimbursement from the

18  $110 million of available "Side A" coverage.  Thus, the Company could never hope

19  to recover more than the $100 million (the amount of "Side B" and "Side C"

20  coverage) from its insurance policies.  These significant disagreements about the

21  damages covered by the policies are resolved by the Insurance Agreement.

22      As a result of the compromise of these and other issues, Broadcom, the

23  Settling Defendants and the Insurers agreed to resolve all disputes over insurance

24  coverage pursuant to the $118,000,000 payment described in the Insurance

25  Agreement.  In their oppositions to preliminary approval, the Objectors and State

26  _____

27  [10] It is not only future coverage that was at risk.  The Insurers also argued that
    rescission would require the Company to repay the $43.3 million previously paid to

28  Broadcom.

1    Derivative Plaintiffs argued incorrectly that Broadcom is "abandoning $92 million

2    in insurance coverage."  Submission of Interested Shareholders of Nominal

3    Defendant Broadcom, Inc. Concerning the Joint Motion for Preliminary Approval,

4    Dkt. 474, pg. 6; Opposition of Defendant Henry T. Nicholas, III to Joint Motion for

5    Preliminary Approval of Partial Settlement, Dkt. 446, pg. 1.[11]  This argument,

6    however, is wrong.  Broadcom and its coverage counsel, with oversight by the

7    mediator and Special Master, engaged in numerous discussions with the Insurers

8    concerning the risks to its insurance coverage.  Weinstein Decl., p. 3:19-27.  The

9    Insurance Agreement resulted from protracted and complex arm's-length

10   negotiations, that included a mediator's proposal, and represented the Company's

11   reasoned judgment in the context of significant risks.[12]

12   C.    **The Settling Parties Negotiated The Settlement, Having A**
         **Thorough Understanding Of The Strengths And Weaknesses Of**
13       **The Case**

14       The stage of the proceedings and the amount of discovery completed is

15   another factor which courts consider in determining the fairness, reasonableness

16   and adequacy of a settlement.  *Officers for Justice*, 688 F. 2d at 625; *In re Warner*

17   *Commc'ns Sec. Litig.*, 798 F.2d at 741 (citation omitted); *see also Girsh*, 521 F.2d

18   at 157;  *Boyd,* 485 F. Supp. at 616-17; *In re Cendant Corp. Litig.*, 264 F.3d 201,

19   _____

20   [11] Without a trace of irony, the Objectors also argued that the Insurance Agreement
     is inadequate because it does not recover all of the $130 million in options-related
21   expenses that Broadcom incurred or advanced through June 2009.  The Objectors
     themselves, however, account for over $70 million of submitted expenses.  That
22   amount has substantially increased since June 2009, and can be expected to climb
     much higher as the Objectors' criminal trials proceed.
23

24   [12] One independent and knowledgeable commentator recently remarked that given
     "the number of carriers involved, the complexity of the coverage issues and the
25   sheer quantity of dollars involved, the completion of the [Broadcom] settlement is
     an extraordinary accomplishment."  *See* Kevin M. La Croix, D&O Insurers Fund
26   $118 Million Partial Settlement of Broadcom Options Backdating Derivative Suit,
     The D&O Diary, *available at* http://www.dandodiary.com/2009/09/articles/options-
27   backdating/do-insurers-fund-118-million-partial-settlement-of-broadcom-options-
     backdating-derivative-suit/.
28

1    234 (3d Cir. 2001) ("This factor captures the degree of case development that class

2    counsel have accomplished prior to settlement.  Through this lens, courts can

3    determine whether counsel had an adequate appreciation of the merits of the case

4    before negotiating.") (internal quotations omitted).

5         The knowledge of Lead Counsel, and the proceedings themselves, have

6    reached a stage where an intelligent evaluation of the litigation and the propriety of

7    settlement can be made.  The Settlement comes after meaningful discovery and

8    investigation by Lead Counsel.  Lead Counsel has conducted a careful analysis of

9    the law and a thorough examination of the facts relating to the allegations against

10   the Settling Defendants.

11        Lead Counsel has served a total of thirty-three document requests to

12   Defendants and third-parties, including to defendants Ruehle, Nicholas, Samueli,

13   Dull, Wolfen, and Ross, and to Ernst & Young LLP and Kaye Scholer LLP.

14   Heimann Decl., ¶ 3.  In total, Federal Derivative Plaintiffs have received and

15   reviewed more than 4.1 million pages of documents from Broadcom, the defendants

16   and third-parties.  *Id.*  Lead Counsel has also taken fourteen depositions, including

17   the depositions of Ernst & Young witnesses responsible for the auditing and

18   restatement work conducted for Broadcom.  *Id.*

19        Lead Counsel also retained insurance counsel at Farella, Braun + Martel LLP

20   to evaluate and respond to the myriad potential defenses to coverage advanced by

21   the Insurers, and to assist in developing and implementing strategies for resolution

22   of the coverage issues.  *Id.* at ¶ 4.

23        For more than sixteen months, the Settling Parties engaged in extensive

24   negotiations regarding a potential settlement of the Federal Derivative Action.

25   Weinstein Decl., pp. 2-3.  In connection with the mediation sessions, the strengths

26   and weaknesses of the parties' respective claims and defenses, as well as the

27   benefits to Broadcom of settlement, were fully explored among the parties and

28   separately with Judge Weinstein and Special Master Carroll.  *Id.* at p. 3:12-27.

1   Thus, the Settling Parties reached an agreement to settle this litigation at a point

2   when they had a full understanding of the legal and factual issues surrounding the

3   case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).[13]

4   **VII.   THE SETTLEMENT IS FAIR TO THE NON-SETTLING**
       **DEFENDANTS**

5

6          The Settlement includes three terms ensuring it is fair to the Non-Settling

7   Defendants.  First, the Settlement caps the Non-Settling Defendants' potential

8   liability in the Federal Derivative Action at the maximum of their proportionate

9   share of liability.  In other words, in no event will the Non-Settling Defendants be

10  responsible for more than their proportionate share of liability. Second, any

11  subsequent judgment against the Non-Settling Defendants will be reduced by the

12  Settlement Amount (approximately $118,000,000), thus ensuring that they will not

13  be responsible for the consideration already paid to Broadcom in compromise of the

14  claims against the other defendants.  Third, the Non-Settling Defendants retain all

15  their rights against the Insurers to the extent they are entitled to coverage.

16         These three terms simply ensure that the Non-Settling Defendants are left in

17  the same position they would have been in absent the Settlement.  Lead Counsel

18  made the determination as to which individuals would be included and which

19  would be excluded from the Settlement.  Heimann Decl., ¶¶ 7-9.  Lead Counsel

20  further determined that these three terms should be included in the Settlement—not

21  to unduly benefit the Non-Settling Defendants, but to foreclose any objection they

22  might have made that the Settlement is somehow affirmatively unfair to them.  *Id.*

23  at ¶ 11.  Such objections would have potentially disrupted and delayed approval of

24

25  ──────────────

26  [13] That the case settled before the completion of formal discovery does not stand in
    the way of approval of the settlement.  Ninth Circuit law is clear that "'formal

27  discovery is not a necessary ticket to the bargaining table' where the parties have
    sufficient information to make an informed decision about settlement."  *Id.*

28  (citations omitted).

1   the Settlement.  Lead Counsel thus determined these terms to be in Broadcom's

2   best interest.  *Id.*

3   **VIII.  <u>THE AGREEMENT FOR THE PAYMENT OF FEES AND</u>**
    **<u>EXPENSES IS APPROPRIATE</u>**

4

5       Lead Counsel has filed an accompanying brief in support of the proposed fee

6   and cost award.  Briefly, though, it should be noted that significant economic

7   benefits have been conferred upon Broadcom by Lead Counsel's efforts in

8   prosecuting the derivative claims and reaching the Settlement that was ultimately

9   obtained.  As part of the Settlement, Broadcom has agreed to pay and Lead Counsel

10  has agreed to accept $11.5 million in attorneys' fees and expenses, subject to this

11  Court's approval.  The parties reached agreement concerning Lead Counsel's

12  attorneys' fee award in connection with the Settlement after the substantive terms

13  of the Settlement were agreed upon.  Heimann Decl., ¶ 6.

14      It should also be noted that the fee here was negotiated under market

15  conditions, a process which courts have encouraged.  *In re Cont'l Ill. Sec. Litig.*,

16  962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the

17  negotiating parties themselves should determine the quantum of attorneys' fee).

18  The agreed upon amount reflects the parties' experience as to what is appropriate

19  for the benefits obtained.  The result is a fee which was negotiated at arm's length

20  and is reasonable.

21  **IX.  <u>THE COURT SHOULD ENTER A STAY IN BOTH THE FEDERAL</u>**
    **<u>DERIVATIVE AND CLASS ACTIONS</u>**

22

23      Pursuant to the Preliminary Approval Order, this Court entered a stay of all

24  proceedings and discovery in the Federal Derivative Action and the Class Action

25  save for proceedings relating to the Stipulation and the Settlement or any future

26  settlement in either action, pending final approval.[14]  The proposed Settlement is

27

28  ───────────────
    [14] This Court entered a stay in the Class Action on October 8, 2009.  We include
    argument in support of that stay in the event reconsideration is sought.  We also

1   conditioned on the entry of the formal stay orders attached to the Stipulation.  No

2   party in the Federal Derivative or Class Action has objected to the entry of the stay.

3   For the reasons discussed above, this condition is important, as the stays will

4   benefit Broadcom and its shareholders, and will create potential efficiencies in the

5   resumed prosecution of the private civil cases.

6   **X.    CONCLUSION**

7          For all of the foregoing reasons the proposed Settlement is fair, adequate, and

8   reasonable, and not a product of collusion or fraud.  The settling parties respectfully

9   submit that this Court should therefore grant final approval of the proposed partial

10  Settlement.

11                                  Respectfully submitted,

12

13  Dated:  November 2, 2009          By:   */s/ Richard M. Heimann*
                                         Richard M. Heimann

14                                    Richard M. Heimann
15                                    Joy A. Kruse
                                      Nancy Chung
16                                    Mikaela Bernstein
                                      LIEFF, CABRASER, HEIMANN &
17                                    BERNSTEIN, LLP
                                      Embarcadero Center West
18                                    275 Battery Street, 29th Floor
                                      San Francisco, CA 94111-3339
19                                    Telephone:  (415) 956-1000
                                      Facsimile:  (415) 956-1008
20
                                      *Lead Counsel for the Derivative Plaintiffs*
21

22

23

24

25

26

27  ───────────────────────────────────────────────
    note that the Court granted limited relief from the Class Action stay pursuant to an
28  application by the Class plaintiffs for such relief.

845755.3                              - 22 -                        C-06-3252 R (CWX)

MPA ISO JOINT MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT

1

2    Dated:  November 2, 2009        By:   */s/ Terry W. Bird*

3                                              Terry W. Bird

4                                 Terry W. Bird
Peter J. Shakow

5                                 BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS & LINCENBERG

6                                 1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561

7                                 Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

8                                 Jeffrey S. Gordon
Robert Barnes

9                                 Gina Guerra
KAYE SCHOLER LLP

10                               1999 Avenue of the Stars
Suite 1700

11                               Los Angeles, CA 90067-6048
Telephone:  (310) 788-1000

12                               Facsimile:  (310) 788-1200

13                               *Counsel for the Special Litigation Committee*

14

15    Dated:  November 2, 2009        By:   */s/ Daniel P. Lefler*

16                                      Daniel P. Lefler

17                                 Layn R. Phillips
David Siegel

18                                 Daniel P. Lefler
Glenn K. Vanzura

19                               IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900

20                               Los Angeles, CA  90067-4276
Telephone:  (310) 277-1010

21                               Facsimile:  (310) 203-7199

22                               *Counsel for Nominal Defendant Broadcom
Corporation and Defendants John E. Major, Scott*

23                               *A. McGregor and Robert E. Switz*

24

25

26

27

28

1

2   Dated:  November 2, 2009          By:   */s/ Shirli Fabbri Weiss*
                                               Shirli Fabbri Weiss
3

4                                     Shirli Fabbri Weiss
                                      Gerard Trippitelli
                                      Noah Katsell
5                                     Karen S. Chen
                                      DLA PIPER LLP (US)
6                                     401 B Street, Suite 1700
                                      San Diego, CA  92101-4297
7                                     Telephone:  (619) 699-2700
                                      Facsimile:  (619) 699-2701
8
                                      *Counsel for Defendants George L. Farinsky,*
9                                     *Alan E. Ross and Werner F. Wolfen*

10

11  Dated:  November 2, 2009          By:   */s/ Seth Aronson*
                                               Seth Aronson
12

13                                    Seth Aronson
                                      Amy Longo
                                      Jorge DeNeve
14                                    Louise C. Chen
                                      O'MELVENY & MYERS LLP
15                                    400 South Hope Street, Suite 1060
                                      Los Angeles, CA  90071-2899
16                                    Telephone:  (213) 430-6000
                                      Facsimile:  (213) 430-6407
17
                                      *Counsel for Defendant David Dull*
18

19

20

21  Dated:  November 2, 2009          By:   */s/ James N. Kramer*
                                               James N. Kramer
22

23                                    James N. Kramer
                                      Carolyn Trinh
                                      Joshua Watts
24                                    ORRICK, HERRINGTON & SUTCLIFFE, LLP
                                      The Orrick Building
25                                    405 Howard Street
                                      San Francisco, CA  94105-2669
26                                    Telephone:  (415) 773-5700
                                      Facsimile:  (415) 773-5759
27
                                      *Counsel for Defendant Aurelio E. Fernandez*
28

1

2   Dated:  November 2, 2009          By:   */s/ Peter Morris*
                                            Peter Morris
3

4                                      Peter Morris
                                       Gregory P. Barbee
5                                      SHEPPARD MULLIN RICHTER
                                        & HAMPTON LLP
6                                      333 South Hope Street, 48th Floor
                                       Los Angeles, CA 90071-1448
7                                      Telephone:  (213) 620-1780
                                       Facsimile:  (213) 620-1398

8                                      *Counsel for Defendant Bruce E. Kiddoo*

9

10  Dated:  November 2, 2009          By:   */s/ Scott J. Poteracki*
                                             Scott J. Poteracki
11                                           *in pro per*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28