# EXHIBIT A

# (CONTINUED, DECLARATION OF GLENN K. VANZURA IN SUPPORT OF NOMINAL DEFENDANT BROADCOM CORPORATION'S MOTION FOR SUMMARY JUDGMENT)

BIRD | MARELLA

BIRD • MARELLA • BOXER • WOLPERT • NESSIM • DROOKS & LINCENBERG

John Francis Carroll
March 4, 2010
Page 4

> (C) On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative…;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. Proc. 26(b)(2)(C).

Courts have routinely limited discovery pursuant to these principles. *See, e.g., Jones v. Cunningham,* 2009 WL 3398801 (N.D. Cal. Oct. 20, 2009) (citing Rule 26(b)(2)(C) and denying request for duplicative deposition); *Public Service Enterprise Group, Inc. v. Philadelphia Elec. Co.,* 130 F.R.D. 543, 551 (D. N.J. 1990) (circumscribing discovery and noting that "the essential information" had been available to litigants for years by virtue of other litigation involving same facts); *Tolliver v. Federal Republic of Nigeria,* 265 F.Supp.2d 873, 880 (W.D. Mich. 2003) (denying discovery requests and noting "the mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions").

Professors Wright and Miller further observe that the Committee Note to the 2000 amendments to Rule 26 highlights the limitations on discovery set forth in subsection (b)(2). The Committee explained that the "otherwise redundant cross-reference" was added to "emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery." *See* 8 Wright, Miller and Marcus, *Federal Practice and Procedure* § 2008.1. The Court and the Special Master, then, are clearly within their authority to limit or refuse discovery, and/or to circumscribe how discovery is conducted.

BIRD | MARELLA

BIRD • MARELLA • BOXER • WOLPERT • NESSIM • DROOKS & LINCENBERG

John Francis Carroll
March 4, 2010
Page 5

### C.  There Is A Need To Control the Costs of This Litigation

In the last several weeks, the parties have signaled an intent to engage in significant additional discovery and extend for at least a year the time before a trial is even scheduled to begin. In addition to identifying dozens of deposition targets, the parties have propounded document requests, interrogatories and other discovery requests on Broadcom, Ernst & Young LLP, Kaye Scholer LLP, and each other, as well as various and sundry third parties. The defendants have further suggested that expert discovery should proceed on a separate, extended, three-month timetable past the discovery cutoff recently imposed in this case. The Committee foresees that, if left unchecked by the Court, these discovery demands and this proposed litigation schedule could result in costs exceeding $100 million from advanced attorneys fees alone. Bird Declaration at ¶ 13.

Certainly the amount of money at stake in this case, while not unprecedented, is considerable. The partial settlement of this case (for $118 million) and the pending settlement of the civil class action (at $160.5 million) suggest that tens or hundreds of millions of dollars might be at issue here. With that kind of money at stake, the defendants contend they are justified in spending a sizable fraction of their potential exposure litigating the case. Even without debating that premise, however, it is clear that the individual defendants have *already* indulged in an astounding level of expenditures totaling well over $109 million. *Id.* at ¶ 7.

Any cost-benefit analysis of additional discovery must begin with the understanding of what already has been made available to all of the parties in this litigation. As many as ten million pages of documents or more already have been produced to the litigants from a variety of sources, including Broadcom (through its various civil and criminal counsel), Ernst & Young LLP, the federal government and Kaye Scholer LLP. *Id.* at ¶ 8. This extraordinary volume of documents and other discovery materials includes more than 40 witness interviews conducted as part of the Audit Committee's Conduct Review, many dozens of FBI witness interview reports (referred to as "302s"), SEC deposition transcripts, and transcripts from depositions of Ernst & Young auditors and partners. *Id.* Perhaps most importantly, the parties have either litigated, observed or read transcripts of an entire federal criminal trial in which 19 lay and expert witnesses were examined on precisely the same facts and documents at issue in this litigation. *Id.* at ¶ 9. A significant portion of the more than $100 million of attorneys fees already incurred appears to have been spent engaging in a thorough examination of this record and those documents. *Id.* at ¶ 10.

BIRD | MARELLA

BIRD • MARELLA • BOXER • WOLPERT • NESSIM • DROOKS & LINCENBERG

John Francis Carroll
March 4, 2010
Page 6

The result of the criminal trial, the dismissal of the SEC actions, and Judge Carney's *sua sponte* expungement of Dr. Samueli's guilty plea suggest that these defendants and their defense counsel are well positioned to respond to the allegations raised in this case on the basis of the information that they already have. With so much already available to the litigants, the Committee is hard pressed to understand how much of the proposed additional discovery is of enough marginal utility to justify the continued burden and expense on the Corporation.

The Committee's analysis of the proposed discovery and trial work, as well as reasonable estimates based on past practice and the attorney billing rates charged to date, suggests that additional document production and review in this litigation would cost upward of $10-12 *per page of discovery. Id.* at ¶ 11. In addition, for document requests made of Broadcom or individuals whose attorneys fees are paid by Broadcom, the Committee estimates an additional cost of approximately $1 per page for production and privilege review costs. As a result, one million pages of additional discovery could result in a possible cost to the Corporation of $11,000,000 to $13,000,000 or more.

Based on its analysis and reasonable estimates, the Committee anticipates that the proposed depositions will cost an average of at least $300,000 each. *Id.* at ¶ 12. Were the Court to allow 59-plus depositions as suggested by the defendants, the Committee anticipates it would cost Broadcom more than $17,000,000. Written discovery, expert fees and costs add up to millions more in potential costs to Broadcom.

Without effective limits on the scope of discovery, the Committee believes it will be difficult to control costs for this case. While Broadcom only has an obligation to advance "reasonable" attorneys' fees, it would not be easy to prove, after the fact, that the defendants' attorneys spent their time unreasonably. This is particularly true if the Court were to permit the discovery generating the costs (implicitly finding that the discovery is "reasonable"). Instead, it is respectfully urged that the Court set strict limits on discovery, while permitting the parties to justify additional discovery based upon the estimated costs and the expected benefits of that specific discovery. Only with particularized information about proposed discovery – including cost estimates – can the Court fairly decide what is reasonable and what is not.

The need to control costs is of enormous importance to the Corporation and its shareholders. Fees advanced to the defendants' counsel directly reduce the cash flow of the Corporation, having nearly a dollar-for-dollar impact on Broadcom's bottom line. An expense of $100 million in legal fees would exceed the entire profit of $65 million earned

BIRD | MARELLA

BIRD • MARELLA • BOXER • WOLPERT • NESSIM • DROOKS & LINCENBERG

John Francis Carroll
March 4, 2010
Page 7

by Broadcom for all of 2009.[4] The Company is currently trading at more than 15 times projected earnings.[5] Thus, a $100 million hit to the bottom line could translate into a loss of $1.5 billion of shareholder value.

Plaintiffs most aggressive damages estimates do not approach these numbers. Even if the plaintiffs prevail and even if Broadcom is later able to recover the advanced attorney's fees, it could take years to recover that money, depriving shareholders of that value for years to come. Nor is victory by the plaintiffs assured. Should the defendants prevail, as they did at the criminal trial and before the SEC, the advanced attorneys' fees would never be recovered.

### III.   PROPOSAL TO LIMIT DISCOVERY AND REQUIRE COST ESTIMATES FOR ADDITIONAL DISCOVERY

For each of the reasons cited above, the Committee believes the Court should establish strict limits on discovery. The Committee respectfully suggests that the best way to accomplish that goal is for the Special Master to establish a baseline of discovery in which the litigants are presumptively entitled to engage. Above and beyond that baseline, any party seeking additional discovery should have to justify to the satisfaction of the Special Master that the benefits of that discovery outweigh the costs (including the estimated costs of each of the other parties).

#### A.   Depositions

As noted above, the Committee estimates that each deposition could easily cost $300,000 or more. In addition, counsel have already heard from a number of the key witnesses in this case, either through deposition testimony, SEC testimony, or testimony at trial. Given these factors, the Committee respectfully asks the Court to place strict limits on the number of depositions to be allowed.

---

[4] *See* Broadcom's 2009 Form 10-K, available at http://www.sec.gov/Archives/edgar/data/1054374/000095012310008370/a53724e10vk.htm#110, at 42.

[5] Broadcom is currently trading above $30 per share. An average of analysts' estimates of current year earnings is less than $2. *See* http://finance.yahoo.com/q/ae?s=BRCM.

# BIRD | MARELLA

BIRD • MARELLA • BOXER • WOLPERT • NESSIM • DROOKS & LINCENBERG

John Francis Carroll
March 4, 2010
Page 8

The Federal Rules of Civil Procedure set out a presumptive limit of ten depositions per side, and a time limit of one day (seven hours) per deposition. Fed. R. Civ. Proc. 30(a) and (d). That presumption should apply in this case, as well.[6] If either side seeks to depose more than ten people, or to extend a deposition beyond one day, the party seeking the additional or extended deposition should be required to seek specific leave from the Special Master, with a justification of the need for the specific deponent's testimony and the estimated cost.

To further the efficiency of those depositions that are permitted, the parties should be required to provide deposition exhibits to the witness' counsel in advance to permit the witness to be prepared primarily on those documents. Plaintiffs have made a similar proposal for all the non-party deponents. In the absence of such a provision, counsel for the witnesses will have to expend inordinate resources reviewing hundreds of thousands of documents stretching back over as many as twelve years.

## B. Documents

The costs associated with document discovery in this case have been and will continue to be enormous. As noted above, the Committee estimates that the collective cost to the Corporation for each of the three defense firms to review documents, could be as much as $10-12 per page for attorney time alone (plus possible production costs). This does not include electronic discovery data hosting charges, which are substantial. Millions of pages have already been produced by all the relevant sources, and it is difficult to understand what additional information can be gleaned from the multitude of document requests now pending or apparently contemplated. Given the prodigious volume of production to date, and the equally mind-numbing cost, the baseline for documentary discovery should be considered satisfied. The Court should therefore impose the following restrictions on all additional document discovery:

- Stay all work on outstanding subpoena and document requests.

---

[6] The Committee understands that a number of depositions of Ernst & Young LLP personnel have already taken place. If the ten-per-side limit is imposed, we would leave it to the Special Master's discretion whether or not to include those. The Committee also believes many of the depositions could easily be completed in a half-day session, and would ask the Special Master to consider setting shorter time limits for some deponents.

**BIRD | MARELLA**

BIRD • MARELLA • BOXER • WOLPERT • NESSIM • DROOKS & LINCENBERG

John Francis Carroll
March 4, 2010
Page 9

- Require estimates of the costs relating to each outstanding subpoena or set of document requests by requester, respondent, and each other party, as well as a justification of the need for the requested additional discovery. Work on outstanding requests should resume only if and when permitted by the Special Master.

- Require similar estimates and justifications for any additional requests.

- For any additional document discovery permitted by the Special Master, require the individual defendants, who are already operating under at least an informal joint defense agreement, to combine the initial review work and create a common electronic repository for the documents and their coding.

### C.    Experts

Broadcom has already expended more than $7 million on experts retained by the three defendants. Bird Declaration at ¶ 7. In the absence of limits on the number of experts and the scope of expert discovery, expert fees could grow exponentially higher. The Court should establish as a baseline that each side is entitled to no more than three expert witnesses, with the individual defendants sharing experts in the first instance. Any additional expert witnesses – including separate experts for the defendants on one or more topics – would be permitted only after the parties have disclosed the potential costs and benefits and if the Special Master determines that the potential benefits outweigh the costs.

### D.    Written Discovery

The presumptive limit on written interrogatories under the Federal Rules is 25 per party, including all subparts. Fed. R. Civ. Proc. 33. To the extent this limit has not already been reached by one or more parties, the Committee suggests that no additional written discovery is warranted without sufficient justification to the Special Master. While early on in the case written discovery might have resulted in some clarification of the issues at stake, we are already far along in this litigation, and the issues are clear. Written interrogatories and requests for admission are routinely met with a volley of objections and attendant motion practice in any event, resulting in little substantive benefit at the cost of higher attorneys fees.

BIRD | MARELLA
BIRD • MARELLA • BOXER • WOLPERT • NESSIM • DROOKS & LINCENBERG

John Francis Carroll
March 4, 2010
Page 10

### E. Timeline

The less time available, whether for fact discovery, expert discovery, or trial preparation, the less attorneys are likely to generate in fees. The litigants have already had close to four years since the filing of the first derivative complaint, and judging from the fees generated, they have used every bit of that time to study the facts and issues underlying this case. The Special Master has set a fact discovery cut-off of October 1, 2010. The Committee respectfully suggests that this should be the cut-off date for all discovery, including experts, with the hope that trial should follow soon after, perhaps as early as November 1, 2010.

## IV. CONCLUSION

The Committee respectfully submits that with these common-sense limitations in place, the Court will achieve significant progress towards containing the costs of this already tremendously expensive litigation. We look forward to discussing these proposals with you on March 10th.

Sincerely,

Terry W. Bird

TWB
Attachments

cc: All Counsel (see attached list)
280187.1

1   Terry W. Bird - State Bar No. 49038
        twb@birdmarella.com
2   Peter J. Shakow – State Bar No. 198633
        pjs@birdmarella.com
3   BIRD, MARELLA, BOXER, WOLPERT,
        NESSIM, DROOKS & LINCENBERG, P.C.
4   1875 Century Park East, 23rd Floor
    Los Angeles, California  90067-2561
5   Telephone: (310) 201-2100
    Facsimile: (310) 201-2110
6
    Attorneys for the Special Litigation
7   Committee of the Board of Directors of
    Broadcom Corporation
8

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                       WESTERN DIVISION

12

13  IN RE BROADCOM CORPORATION          CASE NO. CV06-3252 R (CWx)
    DERIVATIVE LITIGATION
14                                       **DECLARATION OF TERRY W.
15                                       BIRD**

16

17                                       The Honorable Manuel L. Real

18                                       Special Master John Francis Carroll

19

20

21

22

23

24

25

26

27

28

280362.1

DECLARATION OF TERRY W. BIRD

## DECLARATION OF TERRY W. BIRD

I, Terry W. Bird, declare as follows:

1.     I am a principal in the law firm of Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, P.C. ("Bird Marella") and an active member of the bar of the State of California and of the United States District Court for the Central District of California. Except where otherwise indicated, I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them if called upon to do so.

2.     I have been a practicing attorney in Southern California for 39 years, including more than four years with the United States Attorney's Office for the Central District of California and nearly 35 years in private practice. I have been a name partner at Bird Marella since the firm's founding in 1977. I have been a Fellow of the American College of Trial Lawyers since 1995. Over my nearly four decades in public service and private practice, I have represented hundreds of clients in a wide variety of complex criminal and civil litigation matters, including parallel civil and criminal matters involving multiple parties, law firms, forums and charges. I have taken an active role in the staffing, management and billing of all or nearly all of those cases, and I am familiar with billing structures, rates and the processes by which law firms prepare a case for trial.

3.     I am co-counsel to the Special Litigation Committee (the "Committee") of the Board of Directors of Broadcom Corporation ("Broadcom" or the "Corporation"), and have represented the Committee in connection with *In re Broadcom Derivative Litigation*, Case No. C-06-3252-R (CWx) (the "Derivative Litigation") and related matters since on or about May 12, 2007.

4.     Pursuant to a resolution dated May 2, 2007, Broadcom's Board of Directors ("Board") established the Committee. The Board thereby delegated to the Committee sole authority on behalf of Broadcom (a) to evaluate the claims made in the derivative actions (including this action); (b) to assess whether the continuation of the derivative actions or pursuit of those claims by or on behalf of the Company is in the Company's best interests;

1 and (c) to make any and all decisions on behalf of the Company regarding the litigation,

2 settlement or other disposition of the derivative actions and claims.

3     5.     A true and correct copy of the minutes from the Board's May 2, 2007

4 meeting, redacted to include those portions reflecting passage of the resolution

5 described in Paragraph 3 above, is attached hereto as Exhibit A.

6     6.     Pursuant to a resolution dated February 25, 2010, the Board expanded the

7 Committee's authority to include "the assessment of reasonableness with respect to legal

8 and other related fees advanced or reimbursed to Dr. Nicholas, Dr. Samueli, Mr. Ruehle

9 and Ms. Tullos." A true and correct copy of the resolution passed by the Board is attached

10 hereto as Exhibit B.

11     7.     I am informed by Broadcom's representatives that as of December 31,

12 2009, Broadcom has advanced and/or accrued attorneys fees and costs in excess of

13 $109 million for (collectively) Mr. Ruehle, Dr. Nicholas, and Dr. Samueli for work

14 performed in connection with the civil and criminal matters relating to allegations of

15 options backdating. The Corporation has also advanced and/or accrued fees and

16 costs totaling approximately $7.8 million for experts retained by the three

17 defendants.

18     8.     Based on filings in this and other related matters, and representations from

19 Broadcom and its civil and criminal counsel, I am informed that over the course of the

20 Derivative Litigation, various parties including, but not limited to, Broadcom, Ernst &

21 Young LLP, the federal government and Kaye Scholer LLP, likely have produced as many

22 as or more than ten million pages to the litigants pursuant to various discovery requests. In

23 addition to SEC deposition transcripts, FBI witness interview reports, and deposition

24 transcripts of various Ernst & Young LLP personnel, which I believe have been or are

25 being made available to all of the litigants, among the documents and other discovery

26 materials produced were more than 40 witness interview reports from Broadcom's Audit

27 Committee Conduct Review.

28

280362.1

3

DECLARATION OF TERRY W. BIRD

9.      Based on information and belief and my personal observation, I am aware that several representatives from the legal teams of both Dr. Nicholas and Dr. Samueli regularly attended proceedings in the federal criminal trial of Mr. Ruehle in the fall of 2009. I am also aware that counsel for all three individual defendants have copies of or access to transcripts of the entirety of the federal criminal proceedings.

10.      Among the numerous filings I have reviewed from the federal criminal action are at least two relevant here. Specifically, I have reviewed a filing by counsel for Dr. Nicholas (Declaration of Lance Wade, dated January 6, 2009) and a filing by counsel for Mr. Ruehle (Declaration of David R. Marbach, dated October 9, 2009). True and correct copies of these declarations are attached as Exhibits C and D, respectively. In these declarations, Dr. Nicholas' and Mr. Ruehle's law firms calculated the attorney time required to perform an initial review and coding of documents in this case. Based on their representations, it appears that Dr. Nicholas' attorneys perform their initial review at a rate of approximately 221 pages per hour, and that Mr. Ruehle's attorneys perform their initial review and coding at a rate of approximately 39 pages per hour. Mr. Wade also noted that attorneys for Dr. Nicholas had, as of January 2009, spent more than 4,000 person hours on this initial review of documents.

11.      I estimate that attorneys' fees relating to document review in this case approach $10 - 12 per page for the three defendants, collectively. I believe this to be a conservative estimate based on the numbers provided in Mr. Wade's and Mr. Marbach's declarations, my own professional experience and several assumptions, including: (a) contract attorneys perform the initial review and coding of all documents, at a cost of approximately $60 - $100 per hour; (b) the initial document review is followed up by additional layers of review and analysis by more senior (and more expensive) attorneys; (c) associates review 5% of the total number of documents, at a rate of 10 pages per hour and at an average billing rate of $500 per hour; and (d) partners review approximately 0.5% of the total number of documents, at a rate of 10 pages per hour and at an average billing rate of $900 per hour.

280362.1

4

DECLARATION OF TERRY W. BIRD

12. I estimate that without additional restrictions, the collective attorney cost for preparing for and conducting one full-day deposition in this litigation would be $300,000 or more. This estimate is based on my own professional experience, my general understanding of the hourly rates charged by the defendants' law firms and previous experience in this case. This estimate includes the cost of three defense firms preparing for the deposition, as well as preparation time for the witness' counsel, but does not include fees and costs of plaintiffs' counsel.

13. I estimate that the fees paid by the Corporation to take the Derivative Litigation to completion could reach $100 million, including expenditures for expert and attorneys' fees for all three remaining defendants and the fees and costs that would be incurred by Broadcom in responding to document requests and in preparing witnesses for their depositions and for trial. This estimate is based upon, among other factors: (a) the $137 million spent on option related litigation in 2009 as disclosed in the Corporation's 10-K; (b) the extent of discovery propounded and sought to date; (c) our understanding of the number of experts that the parties might seek to retain, the number of documents being reviewed, the number of depositions sought and other trial preparation work going forward; (d) my experience in handling complex litigations; and (e) my general understanding of the rates that the relevant law firms have charged and will charge in this matter.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Los Angeles, California on March 4, 2010.


_Terry W. Bird_

TERRY W. BIRD

280362.1

5

DECLARATION OF TERRY W. BIRD

# Exhibit A

# BROADCOM CORPORATION

## MINUTES OF A MEETING OF
## THE BOARD OF DIRECTORS

### May 2-3, 2007

Pursuant to notice duly given or validly waived, a regular meeting of the Board of Directors (the "Board") of Broadcom Corporation, a California corporation (the "Company"), was held at the offices of the Company on May 2 and 3, 2007, beginning at 1:47 p.m. on May 2.



Redacted

BDMN 2007 05 02  2007 05 03 (REG) (3).doc

1



Following the discussion, and upon motion duly made and seconded, the Board unanimously adopted the following resolutions:

Creation of Special Litigation Committee

WHEREAS, certain shareholders have filed shareholder derivative actions against the Company and certain of its present and former officers and directors arising from the

BDMN 2007 05 02  2007 05 03 (REG) (3).doc                    2                    Redacted

**105**

Company's historical option granting practices in the Superior Court of California, County of Orange, and the United States District Court for the Central District of California (the "Derivative Actions"); and

WHEREAS, the Company has devoted a significant amount of management time, and financial resources, including legal fees and expenses, to conduct externally led investigations into the facts relating to the Company's historic option granting practices (the "Prior Investigations"); and

WHEREAS, this Board deems it advisable and in the best interests of the Company to establish an independent committee to evaluate the claims made in the Derivative Actions; to assess whether the continuation of those actions or pursuit of those claims by or on behalf of the Company is in the Company's best interests; and to the extent the committee decides that pursuing any of those claims is in the Company's best interests, to make any and all decisions on behalf of the Company regarding the litigation, settlement or other disposition of such claims.

NOW, THEREFORE, BE IT RESOLVED, that a Special Litigation Committee ("the Committee") be, and it hereby is, constituted;

RESOLVED FURTHER, that Nancy H. Handel, John Major and Robert E. Switz be, and each of them hereby is, appointed to the Committee to serve until such member's successor is appointed by the Board, such member resigns from the committee or such member ceases to be a director of the Company;

RESOLVED FURTHER, that the Committee is hereby authorized to investigate, review, and analyze the facts and circumstances regarding the claims made in the Derivative Actions;

RESOLVED FURTHER, that in conducting its analysis of the claims made in the Derivative Actions, the Committee may exercise its own judgment to determine (i) the extent to which the factual determinations made as a result of the Prior Investigations can be relied upon by the Committee, taking into consideration whether the Prior Investigations employed adequate procedures and were conducted with appropriate thoroughness; and (ii) the extent to which further factual investigation, review or analysis is needed;

RESOLVED FURTHER, that the Committee is hereby authorized to engage such experts and advisers, including independent legal counsel, as the Committee shall deem necessary or desirable to assist it in the discharge of its responsibilities;

RESOLVED FURTHER, that the determinations made by the Committee with respect to the Derivative Actions shall be final, shall not be subject to review by the Board, and shall in all respects be binding upon the Company;

RESOLVED FURTHER, that the officers, agents, and employees of the Company are hereby authorized and directed to assist the Committee and to provide it with all

information and documents that it requests with respect to the subject matter of the Derivative Actions;

RESOLVED FURTHER, that the Committee is hereby authorized to maintain such records of, and establish such procedures with respect to, its proceedings, consistent with California law and this Company's Amended and Restated Bylaws, as it considers appropriate;

RESOLVED FURTHER, that, to the fullest extent permitted by law, the deliberations and records of the Committee shall be confidential and, without limiting the generality of the foregoing, all statutory and common law privileges shall be available with respect to legal advice rendered to, and documents prepared by counsel to assist, the Committee in its deliberations;

RESOLVED FURTHER, that members of the Committee shall be entitled to indemnification to the fullest extent permitted by applicable California law, consistent with the Company's Amended and Restated Bylaws and the Indemnification Agreement between each member of the Committee and the Company; and

RESOLVED FURTHER, that the Committee is hereby authorized to continue in existence until such time as the Committee shall recommend its dissolution to the Board.





Redacted

BDMN 2007 05 02 2007 05 03 (REG) (3).doc

5



Redacted

109



Redacted



Redacted



Redacted



BDMN 2007 05 02 2007 05 03 (REG) (3).doc

10

Redacted



Redacted

BDMN 2007 05 02 2007 05 03 (REG) (3).doc                    11



David A. Dull
Secretary

**115**

# Exhibit B

**RESOLUTIONS DULY ADOPTED**
**BY THE BOARD OF DIRECTORS**
**OF**
**BROADCOM CORPORATION**

**February 25, 2010**

Expansion of Authority of Special Litigation Committee

WHEREAS, by resolution dated May 2, 2007 this Board authorized the creation of a Special Litigation Committee (the "SLC") to, among other things, investigate and evaluate claims alleged in pending shareholder derivative actions filed against the Company, each of the members of the Board, and certain current and former officers (the "Derivative Actions");

WHEREAS, on December 13, 2007 this Board expanded the scope of the SLC's authority to include the investigation and evaluation of claims against Nancy Tullos, former Vice President, Human Resources of the Company, relating to historical option granting practices at the Company and her guilty plea to a felony obstruction of justice charge in the U.S. District Court for the Central District of California and any issues relating to her indemnification rights;

WHEREAS, each of Henry T. Nicholas, Henry Samueli, William Ruehle and Ms. Tullos has an indemnification agreement with the Company (the "Indemnification Agreements") and pursuant to such agreements each of the foregoing individuals has been advanced and/or reimbursed for certain legal and related fees incurred in connection with or related to the defense of lawsuits pending against the Company and those individuals;

WHEREAS, the Indemnification Agreements provide, subject to certain limitations prescribed therein, for the advancement of any and all *reasonable* expenses incurred in investigating or defending any threatened or pending action, suit or proceeding;

WHEREAS, currently the Company's senior management has been assessing the reasonableness of advanced and/or reimbursed fees under the indemnification agreements and the Board wishes to delegate that responsibility going forward to the SLC.

NOW, THEREFORE, BE IT RESOLVED, that the Board hereby expands the scope of the SLC's authority to include the assessment of reasonableness with respect to legal and other related fees advanced or reimbursed to Dr. Nicholas, Dr. Samueli, Mr. Ruehle and Ms. Tullos.

RESOLVED FURTHER, that any action the SLC takes relating to the subject matter of these resolutions shall not be subject to review by the Board and shall in all respects be binding on the Company; and

RESOLVED FURTHER, that the SLC's decisions with respect to the legal fees herein described and any actions taken with respect thereto shall be governed by the terms of the board resolutions approved May 2, 2007 and December 13, 2007.

# Exhibit C

1   Brendan V. Sullivan, Jr. (*pro hac vice*)
    bsullivan@wc.com
2   Barry S. Simon (*pro hac vice*)
    bsimon@wc.com
3   Kevin M. Downey (*pro hac vice*)
    kdowney@wc.com
4   WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
5   Washington, D.C. 20005
    Telephone: (202) 434-5140
6   Facsimile: (202) 434-5029

7   James D. Riddet (State Bar No. 39826)
    JRiddet@stokkeriddet.com
8   STOKKE & RIDDET
    3 MacArthur Place, Suite 750
9   Santa Ana, CA 92707-5903
    Telephone: (714) 662-2400
10   Facsimile: (714) 662-2444

11   *Attorneys for Dr. Henry T. Nicholas, III*

12

13         UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA
14             SOUTHERN DIVISION

| 15 UNITED STATES OF AMERICA, | CASE NO. SA CR 08-00139 CJC |
|---|---|
| 16      Plaintiff, | |
| 17    v. | DECLARATION OF LANCE A. WADE IN SUPPORT OF STATUS REPORT FOR JANUARY 2009 STATUS CONFERENCE |
| 18 HENRY T. NICHOLAS, III, et al., | |
| 19      Defendants. | |
| 20 | Judge: Hon. Cormac J. Carney |
| | Date: January 20, 2009 |
| 21 | Time: 9:00 a.m. |
| | Dept.: Courtroom 9B |

22

23

24

25

26

27

28

DECLARATION OF LANCE A. WADE IN SUPPORT OF
STATUS REPORT

CASE NO. SA CR 08-00139 CJC

Page 10
EXHIBIT A

119

## DECLARATION OF LANCE A. WADE

I, Lance A. Wade, hereby declare:

1.    I am an attorney at the law firm of Williams & Connolly LLP, counsel for Dr. Henry T. Nicholas, III. I make this declaration in support of Dr. Nicholas' status report for the January 2009 status conference.

2.    I have coordinated our firm's processing and review of the discovery materials described herein.

3.    Between August 4, 2008 and December 19, 2008, the government produced to Dr. Nicholas 66 discs (CDs or DVDs) that contain various electronic files, including numerous databases of documents, native format electronic documents, and video and audio files, among other things (collectively, "Discovery Materials"). The government produced 55 discs by Federal Express on August 4, 2008; 1 disc by mail on October 20, 2008; 6 discs by mail on November 4, 2008; 2 discs by mail on November 7, 2008; 1 disc by mail on November 20, 2008; and 1 disc by mail on December 19, 2008.

4.    These Discovery Materials appear to have been collected from or relate to numerous entities and individuals, including: Broadcom, Bellagio Hotel, ChoicePoint, Cingular, Citibank, Credit Suisse First Boston, Credit Suisse Securities (CSSU), Dean Kato Group, Dell Computer, Deloitte Tax LLC, David Dull, Ed Frank, Ernst & Young LLP, Federal Aviation Administration, Four Seasons Hotel, Google (for subsidiary YouTube), Goldman Sachs, Hard Rock Hotel, Harris myCFO, Henry Nicholas, Henry Samueli, Irell & Manella LLP, James Traut Law Firm, Lehman Brothers, LSI Logic, Mandalay Bay Resort and Casino, Marriott Hotel, Merrill Lynch, Motorola, Morgan Stanley, Mehrdad Nayebi, Newport Beach Police Department, Northern Trust, Olympus Limousine, Prudential Equity Group, Qlogic, Ritz-Carlton, Rockwell, Alan E. Ross, William Ruehle, Samueli Foundation, Shady Canyon, Signature Flight Support, Snake River Lodge and Spa,

DECLARATION OF LANCE A. WADE IN SUPPORT OF      2      CASE NO. SA CR 08-00139 CJC
STATUS REPORT

1  Smith Barney, Sprint, TechNet, Nancy Tullos, UBS Warburg, US Bank, Verizon

2  Wireless, VIP Limousine, Wells Fargo, and Werner Wolfen.

3       5.  The Discovery Materials were produced in a variety of different

4  formats. Combining these various productions into a combined data set that could

5  be loaded into a single uniform database platform that would facilitate our document

6  review required extensive data processing that took several weeks to complete.

7       6.  The Discovery Materials received from the government to date

8  comprise approximately 350,219 documents, totaling 1,184,915 pages. The raw

9  data size for these documents is 71.0 GB.

10       7.  Dr. Nicholas has a team of lawyers dedicated to an initial review

11  of the Discovery Materials to separate materials that are relevant to the case from

12  the materials that are not relevant. This review team has worked a combined total of

13  approximately 4,020 person hours on the initial review. In addition, the attorneys

14  directly involved in the preparation of Dr. Nicholas' defense have devoted a total of

15  more than 6,700 hours to preparing this case for trial.

16       8.  The initial review of the Discovery Materials is approximately

17  75% complete.

18       9.  On December 17, 2008, government counsel requested that

19  defense counsel supply 100 GB hard drives to the government so that it can produce

20  to the defendants additional Discovery Materials. A 100 GB hard drive can hold

21  approximately 1.8 million pages of documents, although the number of pages can

22  vary based on the types of files that are stored on the hard drive. Because of the

23  format in which the Discovery Materials have been produced thus far, there is no

24  way to electronically determine which of these new Discovery Materials was

25  already included within Discovery Materials the government previously produced.

26  These new Discovery Materials will therefore need to be reviewed in their entirety

27  by Dr. Nicholas' review team.

28

DECLARATION OF LANCE A. WADE IN SUPPORT OF STATUS REPORT     3    CASE NO. SA CR 08-00139 CJC

1         10.    Once the review team completes its review of all of the

2  Discovery Materials, substantial additional document review is required by

3  Williams & Connolly LLP attorneys directly involved in the preparation of Dr.

4  Nicholas' defense.

5         11.    Attached as Exhibit 1 hereto is a true and correct copy of a

6  December 18, 2006 press release issued by Broadcom Corporation, captioned

7  "Broadcom Announces Conclusions of Options Grant Review."

8         12.    Attached as Exhibit 2 hereto is a true and correct copy of an

9  excerpt of the transcript of the July 1, 2008 status conference in this case.

10        13.    Attached as Exhibit 3 hereto is a true and correct copy of an

11  excerpt of the transcript of the August 4, 2008 proceedings in *SEC v. Nicholas, et*

12  *al.*, No. SACV 08-00539-CJC.

13        14.    Attached as Exhibit 4 hereto is a true and correct copy of a

14  December 17, 2008 letter from Tobin J. Romero, Esq. to AUSA Andrew Stolper.

15        15.    Attached as Exhibit 5 hereto is a true and correct copy of a letter

16  dated December 19, 2008 from AUSA Andrew Stolper to Brendan V. Sullivan,

17  Esq., without enclosures.

18        16.    Attached as Exhibit 6 hereto is a true and correct copy of an

19  excerpt of the transcript of a December 8, 2008 motions hearing in this case.

20       I declare under penalty of perjury, under the laws of the United States

21  of America, that the foregoing is true and correct.

22       Executed this 6th day of January 2009.

23

24

25                Lance A. Wade

26

27

28

DECLARATION OF LANCE A. WADE IN SUPPORT OF       4       CASE NO. SA CR 08-00139 CJC
STATUS REPORT

# Exhibit D

1  RICHARD MARMARO (Bar No. 91387)
2  rmarmaro@skadden.com
   JACK P. DICANIO (Bar No. 138782)
3  jdicanio@skadden.com
4  MATTHEW E. SLOAN (Bar No. 165165)
   masloan@skadden.com
5  MATTHEW DONALD UMHOFER (Bar No. 206607)
6  mumhofer@skadden.com
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
7  300 South Grand Avenue, Suite 3400
8  Los Angeles, California 90071-3144
   Tel: (213) 687-5000
9  Fax: (213) 687-5600

10 Attorneys for Defendant William J. Ruehle

11               UNITED STATES DISTRICT COURT
12             CENTRAL DISTRICT OF CALIFORNIA
                    SOUTHERN DIVISION
13

14 UNITED STATES OF AMERICA,          CASE NO. SACR 08-139-CJC

15              Plaintiff,            DECLARATION OF DAVID D.
16                                   MARBACH IN SUPPORT OF
                                     WILLIAM J. RUEHLE'S MOTION
17         v.                        FOR CONTINUANCE

18 HENRY T. NICHOLAS III and
19 WILLIAM J. RUEHLE,

20              Defendants.

                                     Judge: The Honorable Cormac J. Carney
21                                   Date:   October 13, 2009
22                                   Time:   9:00 a.m.
                                     Dept.:  Courtroom 9B
23

24

25

26

27

28

---

MARBACH DECLARATION IN SUPPORT OF WILLIAM J. RUEHLE'S MOTION FOR CONTINUANCE;
No. SACR 08-139-CJC

### <u>DECLARATION OF DAVID D. MARBACH</u>

1.      I am the Legal Technology Project Manager for the Los Angeles office of Skadden, Arps, Slate, Meagher & Flom LLP, counsel of record for defendant William J. Ruehle in the above-captioned matter. I submit this declaration in support of William J. Ruehle's Opposition to Motion to Quash Kaye Scholer Subpoena.

2.      For the past 12 months I have been responsible for the technical aspects of document management in this case. I manage the intake and loading of electronic document productions as well as the systems that are used by attorneys to review and code these documents. My responsibilities include collecting and reporting statistics regarding progress of document review projects.

3.      On October 7, 2009, I collated the statistics for the ongoing review of documents produced to Mr. Ruehle in this case. Attorneys assigned to review and code documents full time, on average, are able to review 313 documents per eight hour day. On average, each reviewer is able to review and code 39 documents per hour. A team of thirty attorneys would be able to review, on average, about 9,390 documents per day.

4.      Based on information received from the vendor, the court ordered production from Williams & Connelly LLP consists of 282,146 documents, including 1,488,168 pages.

5.      Based on the capacity of a team of 30 document reviewers, I estimate that it would take about 30 days, including weekends, to complete the initial review and coding of 282,146 documents.

6.      If the 1,488,168 pages of documents to be reviewed expands to 4.1 million pages, or approximately 777,000 documents, it will take approximately 82 days for a team of 30 reviewers to complete their review and coding of those documents.

1    I declare under penalty of perjury under the laws of the State of California and

2  the United States of America that the foregoing is true and correct.

3    Executed on this 9th day of October 2009, at Los Angeles, California.

4

5    By: _____

6    DAVID D. MARBACH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I hereby certify that I caused the foregoing to be filed with the Clerk of the
Court by using the ECF system which sent notification of the filing to the following:

Brendan V. Sullivan, Jr.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

James D. Riddet
STOKKE & RIDDET
3 MacArthur Place, Suite 750
Santa Ana, CA 92707

Robb C. Adkins
UNITED STATES ATTORNEY'S OFFICE
411 W. Fourth St., 8th Flr.
Santa Ana, CA 92701

By: _____/s/ Richard Marmaro_____
RICHARD MARMARO

127

**SERVICE LIST**
**In Re Broadcom Corporation Derivative Litigation**
**Case No. CV 06-3252 R (CWx)**

| | |
|---|---|
| David Siegel | Richard Marmaro |
| Christopher Cowan | Jack P. DiCanio |
| Daniel P. Lefler | Matthew E. Sloan |
| Glenn K. Vanzura | Matthew D. Umhofer |
| Garland Kelley | Lisa Johnson |
| Irell & Manella LLP | Kristen Tahler |
| 1800 Avenue of the Stars, Suite 900 | Jason D. Russell |
| Los Angeles, CA 90067 | Skadden, Arps, Slate, Meagher & Flom |
| Telephone: (310) 203-7129 | 300 So. Grand Avenue, Suite 3400 |
| Facsimile: (310) 203-7199 | Los Angeles, CA 90071-3144 |
| **Counsel for Broadcom Corp.** | Telephone: (213) 687-5480 |
| | Facsimile: (213) 621-5430 |
| | **Counsel for William Ruehle** |
| | |
| James R. Asperger | Seth Aronson |
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | Louise C. Chen |
| | J. Jorge DeNeve |
| 865 South Figueroa Street, 19th Floor | Amy Longo |
| Los Angeles, California 90017 | O'Melveny & Myers |
| Telephone: (213) 443-3223 | 400 S. Hope Street, Suite 1060 |
| Facsimile: (213) 443-3100 | Los Angeles, CA 90071 |
| **Counsel for David A. Dull** | Telephone: (213) 430-7486 |
| | Facsimile: (213) 430-6407 |
| | **Counsel for David A. Dull** |
| | |
| Gordon Greenberg | George A. Borden |
| Jon Dean | Tobin J. Romero |
| McDermott Will & Emery | Lance Wade |
| 2049 Century Park East, 34th Floor | Williams & Connolly LLP |
| Los Angeles, CA 90067-3208 | 725 Twelfth Street, N.W. |
| Telephone: (310) 277-4110 | Washington, DC 20005 |
| Facsimile: (310) 277-4730 | Telephone: (202) 434-5000 |
| **Counsel for Henry Samueli, Ph.D.** | Facsimile: (202) 434-5029 |
| | **Counsel for Henry T. Nicholas III** |
| | |
| Lawrence P. Kolker | Francis M. Gregorek |
| Paulette S. Fox | Betsy C. Manifold |
| Gregory M. Nespole | Rachele R. Rickert |
| Wolf Haldenstein Adler Freeman & Herz LLP | Francis A. Bottini Jr. |
| | Wolf Haldenstein Adler Freeman & Herz, LLP |
| 270 Madison Avenue | 750 B Street, Suite 2770 |
| New York, NY 10016 | San Diego, CA 92101 |
| Telephone: (212) 545-4600 | Telephone: (619) 239-4599 |
| Facsimile: (212) 545-4653 | Facsimile: (619) 234-4599 |
| **Counsel for L.A. Murphy** | **Counsel for L.A. Murphy** |

| | | |
|---|---|---|
| 1 | Layn R. Phillips<br>Irell & Manella LLP | Gregory P. Barbee<br>Peter Morris |
| 2 | 840 Newport Center Dr., Suite 400<br>Newport Beach, CA 92660-6324 | Sheppard Mullin Richter & Hampton LLP<br>333 S. Hope St., 48th Floor |
| 3 | Telephone: (949) 760-5296<br>Facsimile: (949) 760-5289 | Los Angeles, CA 90071<br>Telephone: (213) 620-1780 |
| 4 | **Counsel for Broadcom Corp.; Scott A.** | Facsimile: (213) 620-1398<br>**Counsel for Gregg Morrison and Adam** |
| 5 | **McGregor; George L. Farinsky; John**<br>**Major; Robert E. Switz** | **Spice** |
| 6 | Daniel L. Germain<br>Rosman & Germain, LLP | Michael Hanrahan<br>Gary F. Traynor |
| 7 | 16311 Ventura Boulevard, Suite 1200<br>Encino, CA 91436-2152 | Prickett, Jones & Elliott, P.A.<br>1310 King Street |
| 8 | Telephone: (818) 788-0877<br>Facsimile: (818) 788-0885 | P.O. Box 1328<br>Wilmington, DE 19899 |
| 9 | **Counsel for Oubo Jim** | Telephone: (302) 888-6500<br>Facsimile: (302) 658-8111 |
| 10 | | **Counsel for Oubo Jim** |
| 11 | Nicole Browning<br>Schiffrin Barroway Topaz & Kessler, LLP | Lee D. Rudy<br>James Miller |
| 12 | 2125 Oak Grove Road, Suite 120<br>Walnut Creek, CA 94598 | Schiffrin Barroway Topaz & Kessler, LLP<br>280 King of Prussia Road |
| 13 | Telephone: (925) 945-0770<br>Facsimile: (925) 945-8792 | Radnor, PA 19087<br>Telephone: (610) 667-7706 |
| 14 | **Counsel for Gordon Postlmayr** | Facsimile: (610) 667-7056<br>**Counsel for Gordon Postlmayr** |
| 15 | | |
| 16 | Arthur L. Shingler III<br>Scott + Scott LLP | David R. Scott<br>Denise V. Zamore |
| 17 | 6424 Santa Monica Boulevard<br>Los Angeles, CA 90038 | Scott + Scott LLC<br>108 Norwich Avenue |
| 18 | Telephone: (213) 985-1274<br>Facsimile: (213) 985-1278 | P.O. Box 192<br>Colchester, CT 06415 |
| 19 | **Counsel for Yen Shei** | Telephone: (860) 537-3818<br>Facsimile: (860) 537-4432 |
| 20 | | **Counsel for Yen Shei** |
| 21 | Judy Scolnick<br>Scott+Scott LLC | James Kramer<br>Richard Gallagher |
| 22 | 29 West 57th Street<br>New York, NY 10019 | Carolyn Trinh<br>Joshua Watts |
| 23 | Telephone: (212) 223-6444<br>Facsimile: (212) 223-6334 | Orrick, Herrington & Sutcliffe LLP<br>The Orrick Building |
| 24 | **Counsel for Yen Shei** | 405 Howard Street<br>San Francisco, CA 94105-2669 |
| 25 | | Telephone: (415) 773-5991<br>Facsimile: (415) 773-5759 |
| 26 | | **Counsel for Aurelio Fernandez** |
| 27 | | |
| 28 | | |

129

1 | Nancy Chung
Richard M. Heimann
2 | Joy A. Kruse
Lieff, Cabraser, Heimann & Bernstein, LLP
3 | 275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
4 | Telephone: (415) 956-1000
Facsimile: (415) 956-1008
5 | **Counsel for Alfred Ronconi**

Shirli Weiss
Noah A. Katsell
Jerry Trippitelli
Karen S. Chen
DLA Piper Rudnick Gray Cary
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: (619) 699-3650
**Counsel for Alan E. Ross; Werner F. Wolfen**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28